1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10    JAMIE BAZZELL, et al.,                      CASE NO. C16-0202JLR

11                        Plaintiffs,             ORDER REGARDING
                                                  PLAINTIFFS' MOTION FOR
12             v.                                 CONDITIONAL CERTIFICATION,
                                                  NOTICE, AND OTHER ISSUES
13    BODY CONTOUR CENTERS, LLC,

14                        Defendant.

15                            **I.      INTRODUCTION**

16         Before the court is Plaintiffs Jamie Bazell and Carissa Alioto's motion for an order

17    (1) authorizing conditional certification of this putative collective action pursuant to the

18    Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and compelling Defendant

19    Body Contour Centers, LLC, d/b/a Sono Bello ("BCC"), to provide Plaintiffs with the

20    identification and contact information for all putative plaintiffs or members of the

21    collective action in electronic format; (2) permitting Plaintiffs to send putative plaintiffs

22    or members of the collective action notice and a reminder letter of the suit in the manner

ORDER- 1

1   proposed by Plaintiffs; (3) permitting Plaintiffs to send an email notification to putative

2   plaintiffs or members of the collective action; (4) requiring BCC to post notice of the

3   collective action at its facilities; (5) providing putative members of the collective action

4   60 days to decide whether they wish to join the action, and (6) tolling the statute of

5   limitations from the date this motion was filed until 60 days after the notice is mailed to

6   putative collective members.  (Mot. (Dkt. # 20); Mem. (Dkt. # 20-1).)

7          BCC opposes the motion.  (*See generally* Resp. (Dkt. # 24).)  BCC argues that the

8   motion should be denied because Plaintiffs' description of the defendant is misleading

9   and their putative collective action includes as putative plaintiffs consultants who are not

10  employed by BCC.  (*Id.* at 5-6.)  BCC also argues that Plaintiffs' proposed notice to

11  putative collective members is misleading or otherwise objectionable.  (*Id.* at 10.)  In

12  addition, BCC also objects to Plaintiffs' request to send notice of the action to putative

13  collective members via email and post the notice at BCC facilities.  (*Id.* at 10-11.)

14  Finally, BCC argues that Plaintiffs have not met the applicable standard for equitable

15  tolling of the limitations period for collective actions under the FSLA.  (*Id.* at 6-10.)

16         In their reply, Plaintiffs agree to narrow the scope of their proposed collective

17  definition and implicitly abandon their argument that the court should toll the statute of

18  limitations by failing to respond to BCC's argument.  (Reply (Dkt. # 26).)  Plaintiffs

19  insist, however, that in addition to mailing, notice of the suit should be emailed to

20  putative collective members and posted at BCC's facilities.

21

22

The court has considered the parties' submissions, the relevant portions of the record, and the applicable law. Being fully advised,[1] the court GRANTS in part and DENIES in part Plaintiffs' motion as described below.

## II.     BACKGROUND

Plaintiffs allege that BCC assigned certain employees, known as consultants, more work than could be completed in a 40-hour work week and thereby required consultants to work more than 40 hours per week. (*See* Compl. ¶¶ 16-17.) Because consultants are not compensated for overtime, Plaintiffs assert that BCC violated the FLSA. (*Id.* ¶¶ 24-30.) Pursuant to the FLSA, Plaintiffs seek conditional certification of the following collective of BCC employees:

> All persons who worked as patient care consultants, traveling patient care consultants, sales consultants, or other similar job titles, for Defendant at any time from April 8, 2013 to the present date (the "FLSA Collective").

(Mem. at 11.)

Toward this end, Plaintiffs assert that BCC specializes in laser liposuction and "total body transformation," including body contouring and facial lifting.[2] (Compl. (Dkt. # 1) ¶ 8; Am. Ans. (Dkt. # 15) ¶ 8.) BCC staffs its clinics with physicians, nurses, front desk coordinators, practice managers, and patient care consultants. (*See* Alioto Decl. (Dkt. # 21-1 at 2) ¶¶ 3-4; Anderson Decl. (Dkt. # 21-1 at 4) ¶¶ 3-4; Bazzell Decl. (Dkt. #

---

[1] No party has requested oral argument, and the court considers it unnecessary for disposition of this motion. *See* Local Rules W.D. Wash. LCR 7(b)(4).

[2] BCC describes these services as including tumescent liposuction, laser lipolysis, and VelashapeTM contouring. (Par Decl. (Dkt. # 25) ¶ 11.)

ORDER- 3

21-1 at 6) ¶¶ 3-4; Lecense Decl. (Dkt. # 21-1 at 8) ¶¶ 3-4; Newberry Decl. (Dkt. # 21-2 at 10) ¶¶ 3-4.)  Ms. Bazzell and Ms. Alioto worked as patient care consultants for BCC. (Alioto Decl. ¶ 2; Bazzell Decl. ¶ 2.)  BCC employs consultants in various locations throughout the country.  (Compl. ¶ 9.)  To date, five current or former consultants have joined Plaintiffs' suit as opt-in Plaintiffs.  (Mem. at 3.)

Plaintiffs assert that all consultants share the same primary job duty:  selling BCC's body transformation procedures and other medical-cosmetic services to patients during scheduled appointments.  (*See* Alioto Decl. ¶ 4; Anderson Decl. ¶ 4; Bazzell Decl. ¶ 4; Lecense Decl. ¶ 4; Newberry Decl. ¶ 4.)  Appointments between consultants and potential patients are scheduled throughout the day at BCC's clinics.  (Alioto Decl. ¶ 4; Anderson Decl. ¶ 4; Bazzell Decl. ¶ 4; Lecense Decl. ¶ 4; Newberry Decl. ¶ 4; *see also* Par Decl. ¶ 13.)  During these appointments, consultants advise patients of the various risks and benefits associated with BCC's procedures and discuss financing options. (Alioto Decl. ¶ 4; Anderson Decl. ¶ 4; Bazzell Decl. ¶ 4; Lecense Decl. ¶ 4; Newberry Decl. ¶ 4; *see also* Par Decl. ¶ 13.)

Plaintiffs allege that BCC pays all its consultants in the same manner:  a monthly salary plus commissions.  (Compl. ¶ 19; Alioto Decl. ¶ 5; Anderson Decl. ¶ 5; Bazzell Decl. ¶ 5; Lecense Decl. ¶ 5; Newberry Decl. ¶ 5.)  BCC classifies all consultants as exempt from the overtime pay requirements of the FLSA pursuant to the retail sales exemption, 29 U.S.C. § 207(i).  (*See* Compl. ¶ 18; Am. Ans. ¶ B ("Defendant is a 'retail or service establishment' that operates under a 'retail concept' as provided under 29 C.F.R. §§ 779.316 and 779.317.  As such, Defendant is exempt from the overtime

1   provisions of the FLSA pursuant to 29 U.S.C. § 207(i), as to its employees who are paid

2   on a commission basis.").)  Plaintiffs assert that although BCC classifies consultants as

3   "exempt," BCC nevertheless requires all consultants to track their hours worked using the

4   time-keeping system known as ADP.  (Alioto Decl. ¶ 5; Anderson Decl. ¶ 5; Bazzell

5   Decl. ¶ 5; Lecense Decl. ¶ 5; Newberry Decl. ¶ 5.)  Plaintiffs testify that they routinely

6   work over 40 hours per week and record a majority, but not all, of their hours in the ADP

7   time-keeping system.  (Alioto Decl. ¶ 5; Anderson Decl. ¶ 5; Bazzell Decl. ¶ 5; Lecense

8   Decl. ¶ 5; Newberry Decl. ¶ 5.)  Plaintiffs also assert that BCC does not pay its

9   consultants overtime compensation.  (Alioto Decl. ¶ 5; Anderson Decl. ¶ 5; Bazzell Decl.

10  ¶ 5; Lecense Decl. ¶ 5; Newberry Decl. ¶ 5.)

11       BCC[3] admits that its consultants meet with patients throughout the day at its

12  various locations to market professional services, which include tumescent liposuction,

13  laser lipolysis, and VelashapeTM contouring.[4]  (Par Decl. ¶¶ 11, 13.)  BCC further

14  admits that it pays its consultants a base salary of about $50,000.00 per year, plus a bonus

15  that is based on sales.  (*Id.* ¶ 15.)  However, BCC asserts that Plaintiffs have erred in how

16  they define the class of employees that Plaintiffs claim have been denied overtime.

17  (Resp. at 2.)  BCC asserts that "Sono Bello" is not the same as Body Contours Centers,

18

---

19     [3] BCC is a closely held Washington limited liability company.  (Par Decl. ¶ 2.)  BCC has

20  12 members and its corporate headquarters are in Kirkland, Washington.  (*Id.* ¶ 2, Ex. 1.)  BCC's
majority owner and manager is Chris Par.  (*Id.*)

21     [4] Consultants usually perform their duties within BCC's facilities; however, some
consultants are required to travel to different clinics.  (Par Decl. ¶ 14.)  These "traveling

22  consultants" are assigned to BCC's corporate office in Kirkland, Washington, for administrative
purposes.  (*Id.*)

LLC.  (*Id.*)  BCC asserts that Sono Bello is not a legal entity but rather a trade name or brand and that more than one entity does business as Sono Bello and employs patient care consultants, but only one of these entities—BCC—is a party to this lawsuit.  (*Id.*)

BCC asserts that it holds rights to the trade name Sono Bello licenses that name or brand to other companies, which do business as Sono Bello.  (Par Decl. ¶ 5.)  BCC states that, pursuant to a Management and Services Agreement ("MSA"), Aesthetics Physicians, P.C., an Arizona professional corporation ("Aesthetics Physicians"), contracts with BCC to provide all of Aesthetics Physicians' management and support services in various locations leased and managed by BCC.  (*Id.* ¶ 6.)  Aesthetics Physicians is licensed under the MSA to use Sono Bello as its practice name.  (*Id.*)

Under the MSA, BCC asserts that it is responsible for providing all of Aesthetics Physicians' nonprofessional (i.e., nonmedical) services, including management, administration, facilities, and support services, which include marketing.  (*Id.* ¶¶ 6-7.)  BCC states that it does not engage in the practice of medicine and is not responsible for Aesthetics Physicians' provision of medical services.[5]  (*See id.* ¶ 10.)  BCC further asserts that it is not responsible for employment decisions regarding the professional staff of Aesthetics Physicians and that Aesthetics Physicians is not responsible for employment decisions regarding the nonprofessional or nonmedical staff of BCC.  (*Id.* ¶ 8.)  Thus, BCC asserts that although Plaintiffs correctly note that each of BCC's clinics is

_____

[5] Mr. Par testifies that he is not and has never been licensed to practice medicine and that he does not practice medicine and never has.  (Par Decl. ¶ 5.)

staffed with physicians and nurses, those physicians and nurses have a different employer—namely, Aesthetics Physicians.

## III.    ANALYSIS

### A. Conditional Certification

The FLSA mandates that no employer shall employ an employee for more than 40 hours in a work week unless that employee is compensated at one and one-half times his or her usual rate for hours worked in excess of 40.  29 U.S.C. § 207(a)(1).  Because consultants are not compensated for overtime, Plaintiffs assert that BCC violated the FLSA.  (*Id.* ¶¶ 24-30.)

The FLSA also provides that employees may pursue their claims collectively:

> An action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b); *see Bollinger v. Residential Capital, LLC*, 761 F. Supp. 2d 1114, 1119-21 (W.D. Wash. 2011) (finding that the plaintiffs and the putative collective members were similarly situated under the "lenient" conditional certification standard of the FLSA).  In such cases, the district court has discretion to authorize judicial notice to putative collective members to inform them of the action and give them an opportunity to participate by opting in.  *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169-70 (1989); *see also Bollinger*, 761 F. Supp. 2d at 1119.  The FLSA's collective action procedure seeks efficient adjudication of similar claims by allowing "similarly situated"

1 ‖ employees to join together and pool their resources.  *See Hoffmann-La Roche*, 493 U.S. at

2 ‖ 170; *Bollinger*, 761 F. Supp. 2d at 1119.

3        In addressing a request for court-authorized notice of a collective action, a court

4 ‖ must consider whether plaintiffs have demonstrated the existence of a definable class of

5 ‖ plaintiffs who are "similarly situated."  *Hoffmann-La Roche*, 493 U.S. at 170.  Although

6 ‖ the Ninth Circuit has not directly addressed the meaning of "similarly situated" under the

7 ‖ FLSA, district courts routinely follow a two-tiered approach in determining whether a

8 ‖ case should be certified under 29 U.S.C. § 216(b).  *See Khadera v. ABM Indus., Inc.*, 701

9 ‖ F. Supp. 2d 1190, 1193-94 (W.D. Wash. 2010) (noting trend and applying two-step

10 ‖ process); *Randolph v. Centene Mgmt. Co.*, No. C14-5730BHS, 2015 WL 2062609, at *2

11 ‖ (W.D. Wash. May 4, 2015) (same); *Troy v. Kehe Food Distribs., Inc.*, 276 F.R.D. 642,

12 ‖ 649 (W.D. Wash. 2011) (same); *see also Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d

13 ‖ 1208, 1219 (11th Cir. 2001) (adopting two-tiered approach).

14        At the first stage, the court determines whether a collective action should be

15 ‖ certified for the purposes of sending judicial notice and conducting discovery.  *Randolph*,

16 ‖ 2015 WL 262609, at *2.  Because the court has minimal evidence at the first stage, the

17 ‖ "similarly situated" determination is made using a "lenient" standard that "usually results

18 ‖ in [conditional] certification" of a representative class.  *Bollinger*, 761 F. Supp. 2d at

19 ‖ 1119.  Under this lenient standard, prospective plaintiffs need not be identical to satisfy

20 ‖ the similarly situated requirement.  *See Villarreal v. Caremark LLC*, 66 F. Supp. 3d 1184,

21 ‖ 1189 (D. Ariz. 2014) ("[P]laintiffs need only show that their positions are similar, not

22 ‖ identical, to the positions held by the putative class members." (internal citations

1    omitted)).  All that is required is some "modest factual showing" that the plaintiff is

2    similarly situated to the potential class.  *Misra v. Decision One Mortg. Co., LLC*, 673 F.

3    Supp. 2d 987, 993 (C.D. Cal. 2008) (citing *Roebuck v. Hudson Valley Farms, Inc.*, 239 F.

4    Supp. 2d 234, 238 (N.D.N.Y. 2002)).  A court can find potential plaintiffs to be

5    "similarly situated" based on a variety of factors "including the specific duties and

6    conditions of employment of the individual plaintiffs, and the various defenses available

7    to the defendant with respect to the individual plaintiffs."  *See Wilson v. Maxim*

8    *Healthcare Servs., Inc.*, No. C14-789RSL, 2014 WL 7340480, at *3 (W.D. Wash. Dec.

9    22, 2014) (citing *Troy*, 276 F.R.D. at 649).

10          Plaintiffs' burden may be met by detailed allegations supported by a very small

11   number of sworn statements.  *See Wilson*, 2014 WL 7340480, at *4 (noting that "[t]he

12   general rule for this Circuit is that . . . [a] handful of declarations may suffice" and

13   granting conditional certification based on four declarations across "three [of

14   defendant's] offices in two states." (internal citation omitted)); *Sanchez v. Sephora USA,*

15   *Inc.*, No. 11-03396 SBA, 2012 WL 2945753, at *3 (N.D. Cal. July 18, 2012) (granting

16   conditional certification of a nationwide collective action based on five declarations);

17   *Gilbert v. Citigroup, Inc.*, No. 08-0385 SC, 2009 WL 424320, at *4 (N.D. Cal. Feb. 18,

18   2009) (granting conditional certification of a nationwide collective action based on five

19   declarations); *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 468-69 (N.D. Cal. 2004)

20   (granting conditional certification based on three affidavits from named plaintiffs);

21   *Escobar v. Whiteside Constr. Corp.*, No. C 08-01120 WHA, 2008 WL 3915715, at *4

22

1   (N.D. Cal. Aug. 21, 2008) (granting conditional certification based on three

2   declarations).[6]

3        Once discovery is complete and the case is ready for trial, the second step of the

4   conditional-certification analysis takes place.  *Troy*, 276 F.R.D. at 649.  The court makes

5   a second determination of the similarly situated question, usually precipitated by the

6   defendant's motion for decertification.  *Wilson*, 2014 WL 7340480, at *3.  At the stricter

7   second stage, the court has much more information on which to base its decision.  *Id.*; *see*

8   *also Troy*, 276 F.R.D. at 649 (quoting *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096

9   (11th Cir. 1996)) (noting that at the second stage the court uses a "stricter standard for

10  determining whether the plaintiffs are 'similarly situated'").  The court considers

11  Plaintiffs' present motion under the more lenient standard applicable to the first stage of

12  certification.

13       BCC objects to Plaintiffs' motion for conditional certification on grounds that

14  Plaintiffs have confused Aesthetics Physicians, which is also a licensee of the "Sono

15  Bello" brand, for BCC.  BCC argues that it is a separate and distinct entity from

16  Aesthetics Physicians and that "BCC and 'Sono Bello' or 'Sono Bello Body Contour

17  Centers' are **not** one in [sic] the same."  (Resp. at 5-6 (emphasis in original).)  In

18  addition, contrary to Plaintiffs' allegation that BCC has 30 clinics (*see* Mem. at 3) in 21

19  states (Compl. ¶ 9), BCC asserts that it manages just 16 clinics in 12 states:  Bellevue and

20

21       [6] Although Plaintiffs' declarations can be characterized as "cookie cutter," that fact does
    not discredit Plaintiffs' declarations at the first stage.  *Wilson*, 2014 WL 7340480, at *4 (citing
22  *Sanchez*, 2012 WL 2945753, at *2).

1   Tacoma, Washington; Beverly Hills, Sacramento, and San Diego, California; Chicago,

2   Illinois; Cincinnati and Cleveland, Ohio; Edina, Minnesota; Greenwood, Colorado;

3   Houston, Texas; Overland Park, Kansas; Portland, Oregon; Salt Lake City, Utah;

4   Scottsdale, Arizona; and St. Louis, Missouri (Par Decl. ¶ 9).  BCC contends that

5   Plaintiffs' confusion concerning the number of BCC locations likely stems from the fact

6   that BCC licenses the Sono Bello brand to other entities in additional states.  (*See* Resp.

7   at 5.)  Thus, "[t]o the extent Plaintiffs are requesting a class comprised of 'Sono Bello'

8   patient care consultants who are not employed by BCC," BCC argues Plaintiffs' motion

9   should be denied.  (*Id.* at 6.)

10          In reply, Plaintiffs state that, after receiving BCC's response, Plaintiffs' counsel

11   consulted with BCC's counsel and agreed to limit the scope of Plaintiffs' proposed

12   collective to include only those consultants who worked in the 16 locations identified by

13   BCC.  (*See* Reply at 2.)  Plaintiffs' revised request for conditional certification includes:

14          All individuals who worked as patient care consultants, traveling patient
            care consultants, patient sales consultants (or other similar job titles), for
15          Defendant Body Contour Centers, LLC d/b/a Sono Bello at any time from
            February 10, 2013, at any of the following locations:  Bellevue,
16          Washington; Tacoma, Washington; Beverly Hills, California; Sacramento,
            California; San Diego, California; Chicago, Illinois; Cincinnati, Ohio;
17          Cleveland, Ohio; Edina, Minnesota; Greenwood, Colorado; Houston,
            Texas; Overland Park, Kansas; Portland, Oregon; Salt Lake City, Utah;
18          Scottsdale, Arizona; and St. Louis, Missouri.

19   //

20   //

21   //

22   //

ORDER- 11

1  (*Id.* at 1-2.)[7]  The modification Plaintiffs propose appears to address BCC's sole

2  objection to conditional certification.

3       BCC has not refuted Plaintiffs' claims that they are "similarly situated."  BCC

4  does not dispute that Plaintiffs and all other consultants were classified as exempt or that

5  Plaintiffs were not paid overtime.  They have not offered any declarations from

6  consultants or others claiming that consultants were paid overtime.  Other than evidence

7  regarding the number and locations of BCC's facilities and the distinctions between

8  BCC, Sono Bello, and Aesthetics Physicians, BCC has not offered any evidence

9  contradicting Plaintiffs' account.  BCC's failure to contradict Plaintiffs' claims of

10  similarity is grounds for granting certification at this stage of the proceeding.  *See*

11  *Bollinger*, 761 F. Supp. 2d at 1121.  Accordingly, the court grants Plaintiffs' motion for

12  conditional certification based on Plaintiffs' revised request.  In addition, the court orders

13  BCC to provide Plaintiffs with the identification and contact information for all putative

14  plaintiffs or members of the collective action as defined above.  BCC must provide that

15  information in electronic format within 20 days of the date of this order.

16  //

17  //

18

19       [7]Neither BCC nor Plaintiffs explain why the FLSA collective period was extended from "April 8, 2013 to the present" in Plaintiff's original motion (*see* Mem. at 11) to February 10,

20  2013, to the present in BCC's response (*see* Resp. at 11) and Plaintiffs' Reply (*see* Reply at 1). However, BCC did not object to enlargement of the period and acknowledged the enlarged time period in its proposed revised email notification.  (*See* Resp. at 11.)  The enlarged period appears

21  to correspond with the three-year statute of limitations for "willful" violations of the FLSA.  *See* 29 U.S.C. § 255(a).  As BCC notes, February 10, 2013, is three years prior to the date on which

22  Plaintiffs filed suit.  (Resp. at 10.)

### B.  Notice by Mail

The court must ensure that notice is "timely, accurate, and informative." *Hoffman-La Roche*, 493 U.S. at 172.  Plaintiffs provide a proposed notice and consent form to be mailed to all members of the collective action.  (*See* Skemp Decl. (Dkt. # 21) Ex. 4.)  The proposed notice provides for a 60-day period during which putative collective members may join this lawsuit.[8]  (*See id.*)

"BCC does not oppose, in principle, the sending of a [c]ourt-approved notice to . . . consultants . . . [who] BCC has employed since February 10, 2013 (three years prior to this suit being filed)."  (Resp. at 10.)  However, BCC objects to the notice on two grounds.  First, BCC objects to the shortening of "Body Contour Centers, LLC, d/b/a Sono Bello" to "Sono Bello" as misleading.  (*Id.*)  Instead, BCC suggests that its formal name not be shortened at all or be shortened to "BCC."  (*Id.*)  BCC also objects to references in the consent form to "my current/former employer(s) Sono Bello, Body Contour Centers, LLC, and any other related entities or affiliates ('Defendants')."  (*Id.*)  BCC objects to this wording because no other entities have been joined to this suit.  (*Id.*)  Thus, BCC argues that the first paragraph of the consent form should be amended as follows:  "I consent to make a claim under the Fair Labor Standards Act, 20 U.S.C. § 201, *et seq.* against my current/former employer, Body Contour Centers, LLC ('Defendant') to recover my overtime pay."  (*Id.*)

---

[8] Case law indicates that a 60-day notice period is appropriate.  *See Senne v. Kan. City Royals Baseball Corp.*, No. 14-CV-00608-JCS, 2015 WL 6152476, at *19 (N.D. Cal. Oct. 20, 2015) ("[T]imeframes of sixty to ninety days appear to have become the presumptive standard in this District.").

1    The court agrees with BCC that Plaintiffs' proposed notice letter should be

2    modified in the manner and for the reasons that BCC suggests.  Accordingly, the court

3    grants Plaintiffs' motion to mail the proposed notice and consent form to all putative

4    plaintiffs or members of the collective as described above, but subject to the two

5    modifications BCC details in its in response.  (*See* Resp. at 10.)

6        Plaintiffs also request that the court authorize one reminder letter to putative

7    collective members who had not yet opted into the case on or about the forty-fifth day of

8    the 60-day period.  (Mem. at 14-15; *see* Skemp Decl. Ex. 5 (attaching Plaintiffs'

9    proposed reminder letter).)  BCC provides no response or objection to Plaintiffs' request

10   for one reminder letter.  (*See generally* Resp.)  The court grants Plaintiffs' motion to mail

11   the proposed reminder letter on or about the forty-fifth day of the notice period, but

12   subject to the same two modifications BCC detailed in its response to Plaintiffs' initial

13   notice letter.

14   **C.  Notice by Email**

15       In addition to notice by mail, Plaintiffs request that the court authorize notice by

16   email to the last known email address of each putative plaintiff or member of the

17   collective.  (Mem. at 13-14.)  Plaintiffs request that the subject line of the email read:

18   "Right to Join a Lawsuit to Recover Unpaid Wages Against Sono Bello."  (*Id.* at 13.)

19   The text of Plaintiffs' proposed email would read:

20       If you worked for Sono Bello as a consultant, a collective action lawsuit
         may affect your rights.  A court authorized this notice.  This is not a
21       solicitation from a lawyer.  To learn more about this lawsuit please visit
         www.nka.com/[text of hyprerlink].

22

ORDER- 14

1    (*Id.*)

2          BCC objects to the sending of email notification.  (Resp. at 11.)  BCC argues that

3    email notification is prejudicial because emails can be easily forwarded to consultants for

4    other "Sono Bello" employers who are not putative members of the collective but who

5    may nevertheless attempt to opt in.  (*See id.*)  Numerous courts have authorized email

6    notification.  *See, e.g.*, *Woods v. Vector Mktg. Corp.*, No. 14-0264, 2015 WL 1198593, at

7    *7 (N.D. Cal. Mar. 16, 2015) (granting request to send notice via website, email,

8    postcard, and Facebook advertisements); *Benedict v. Hewlett-Packard Co.*, No. 13-CV-

9    00119-LHK, 2014 WL 587135, at *14 (N.D. Cal. Feb. 13, 2014) ("Courts routinely

10   approve the production of email addresses . . . with other contact information to ensure

11   that notice is effectuated, and the Court finds that warranted here as well."); *Lewis v.*

12   *Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1128 (N.D. Cal. 2009) ("The Court finds that

13   providing notice by first class mail and email will sufficiently assure that potential

14   collective action members receive actual notice of this case.  Defendant's objection to the

15   production of email addresses is baseless.").  Email is no longer novel but a routine and

16   critical form of communication.  The court concludes that BCC's objection to email as a

17   form of notification is without merit.

18         BCC also objects to the content of Plaintiffs' proposed email notification on

19   several grounds.  First, BCC objects to the reference to Sono Bello because it is

20   misleading regarding the identity of the defendant in this action.  (Resp. at 11.)  BCC also

21   objects to the statement that the email "is not a solicitation from a lawyer" on the ground

22   that the statement is contradicted by the fact that the email will be sent by Plaintiffs'

1  lawyer.  (*Id.*)  Finally, BCC objects to Plaintiffs' statement that the lawsuit "may affect

2  your rights."  (*Id.*)  BCC asserts that a putative plaintiff's rights are only affected if he or

3  she actually opts into the suit.  (*Id.*)

4        The court agrees with BCC that Plaintiffs' statement that the "lawsuit may affect

5  your rights" is misleading in the context of an opt-in collective action.  If this were a

6  Federal Rule of Civil Procedure 23 class action, then taking no action would affect

7  putative plaintiffs because they would be in the lawsuit unless they affirmatively elected

8  to opt out.  In this opt-in FLSA collective action, however, doing nothing will have no

9  effect on an employee's rights because he or she will not be bound by any judgment and

10  remains free to bring his or her own suit.  The consultants' right to sue is not jeopardized

11  by declining or failing to join this lawsuit.

12        The court also agrees that Plaintiffs' reference to "Sono Bello" is misleading as to

13  the identity of the defendant in this suit.  As noted above, BCC licenses the name Sono

14  Bello to other companies, which in turn do business as Sono Bello.  (*See* Par Decl. ¶ 5.)

15  Thus, referencing Sono Bello in the heading and body of the email, without indicating

16  that Sono Bello is a d/b/a for BCC, is potentially misleading regarding the defendant in

17  this action.  Accordingly, the court orders that in any notice provided to putative plaintiffs

18  or member of the collective action—sent via email or otherwise—Plaintiffs shall refer to

19  BCC as "Body Contour Centers, LLC, d/b/a Sono Bello," which may subsequently be

20  shortened to "BCC" within the same notice.

21        Finally, the court finds merit with BCC's objections to Plaintiffs' statements that

22  the "court authorized the notice" and that the email "is not a solicitation from a lawyer."

1   Although the first statement is technically accurate because the court will authorize email

2   notice, the second statement is at least confusing in that Plaintiffs' counsel will send the

3   email.  Further, the court finds that the combined statements might lead putative plaintiffs

4   to believe that the court is endorsing the lawsuit rather than serving as a neutral arbiter.

5   The Supreme Court stated in *Hoffmann-La Roche* that "in exercising the discretionary

6   authority to oversee the notice-giving process, courts must be scrupulous to respect

7   judicial neutrality."  493 U.S. at 174.  "To that end, trial courts must take care to avoid

8   even the appearance of judicial endorsement of the merits of the action."  *Id.*  Notice has

9   the "purpose of providing [potential plaintiffs] with a neutral discussion of the nature of,

10  and their rights in, these consolidated actions."  *Monroe v. United Air Lines, Inc.*, 90

11  F.R.D. 638, 640 (D.C. Ill. 1981).

12          BCC argues that if an email notification is sent at all, it should be modified as

13  follows:

14          A collective action lawsuit has been initiated in Washington State.  You
            may be able to join the lawsuit if you worked as a patient care consultant or
15          traveling patient care consultant for Body Contour Centers, d/b/a Sono
            Bello, after February 10, 2013, at any of the following locations:  Bellevue
16          and Tacoma, Washington; Beverly Hills, Sacramento, and San Diego,
            California; Chicago, Illinois; Cincinnati and Cleveland, Ohio; Edina,
17          Minnesota; Greenwood, Colorado; Houston, Texas; Overland Park, Kansas;
            Portland, Oregon; Salt Lake City, Utah; Scottsdale, Arizona; and St. Louis,
18          Missouri.  To learn more about this lawsuit please visit www.nka.com/[text
            of hyperlink].
19
20  (Resp. at 11.)  The court finds that BCC's proposed email notification strikes a more

21  neutral chord with respect to the litigation than Plaintiffs' proposal.  Nevertheless, the

22  court modifies the first sentence of Defendants' proposed email notice to read:  "A

collective action lawsuit has been initiated in federal court in the Western District of Washington."[9]

Based on the foregoing analysis, the court grants in part and denies in part Plaintiffs' motion for email notification to putative members of the collective.  The court authorizes Plaintiffs to send an email notification to putative plaintiffs or members of the collective, but in the form proposed by BCC with the court's modification to the first sentence of BCC's proposed form as indicated above.

**D.  Posting Notice at BCC Facilities**

Plaintiffs also move for authorization to post notice of the suit in the lunch or break rooms at BCC facilities.  (Mem. at 13; Reply at 3-4.)  BCC objects to this form of notice as potentially disruptive and prejudicial.  (Resp. at 11.)  BCC asserts that such notice will "serve[] only to diminish the Company in the eyes of other workers before the Company has had a chance to vindicate itself."  (*Id.*)  BCC points out that each of its facilities is also staffed by medical personal who BCC does not employ and other employees who are not putative members of the collective.  (*Id.*)  Indeed, BCC identifies that only one of any given location's employees is a patient care consultant.  (*Id.*)  Thus, posting at BCC's facilities will do little to further actual notice to potential plaintiffs while creating potential workplace dissention or disruption.  (*See id.*)  In these  narrow

---

[9] Although the Western District of Washington is located in Washington State, BCC's proposed statement that a "lawsuit has been initiated in Washington State" may lead putative plaintiffs or members of the collective to believe that Plaintiff initiated the lawsuit in state rather than federal court.  The court's modification provides accuracy and clarity with respect to the location of the suit.

1  factual circumstances, where only one employee at each site is a potential member of the

2  collective, the court agrees that the potential for prejudice to BCC outweighs any minimal

3  benefit with respect to notice—particularly where the court has already approved more

4  targeted notice through direct mailings and email.  Accordingly the court denies

5  Plaintiffs' motion for authorization to post notice of this lawsuit at BCC's facilities.

6      **E.  Tolling of the Statute of Limitations**

7          The statute of limitations for collective actions under the FLSA is two to three

8  years depending on whether the violation is determined to be "willful."  29 U.S.C.

9  § 255(a).[10]  Unlike class actions pursuant to Federal Rule of Civil Procedure 23, the

10  statute of limitations in FLSA collective actions continues to run on each individual's

11  claim until the individual files a consent form with the court to join the action as an opt-in

12  plaintiff.  *Grayson*, 79 F.3d at 1106 n.38; *Senne*, 2015 WL 6152476, at *16 (noting that

13  the filing of a representative action does not toll the limitations period for putative class

14  members who are not named plaintiffs until they file an opt-in form consenting to

15  joinder).  Accordingly, Plaintiffs request that the court toll the statute of limitations "from

16  the date Plaintiffs filed this motion until 60 days after notice is mailed to putative

17  collective members."  (Mem. at 16.)  Plaintiffs ask the court to toll the statute of

18  limitations in order to "ensure Plaintiffs' claims are not prejudiced due to unforeseen

19  delays."  (*Id.*)  Plaintiffs cite only foreign authority in support of their request.  (*Id.*)

20

21  _____

22      [10] Plaintiffs allege that BCC's failure to pay them overtime wages was willful.  (Compl. ¶ 22.)

1      Defendants argue that absent any basis in law or equity to deviate from the

2  limitations period set forth in the FLSA, the court should deny Plaintiffs' request.  (Resp.

3  at 6-9.)  The court agrees.  In the Ninth Circuit, a statute of limitations may be equitably

4  tolled when (1) the plaintiff is prevented from asserting a claim by the defendant's

5  wrongful conduct or (2) extraordinary circumstances beyond the plaintiff's control made

6  it impossible to file a claim on time.  *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir.

7  1999) (citing *Alvarez-Machain v. United States*, 107 F.3d 696, 701 (9th Cir. 1996)).

8  Plaintiffs never identify any specific prejudice or delays that have occurred.  Plaintiffs

9  present no evidence that any potential plaintiff's right to opt in or file his or her own suit

10  for an alleged FLSA violation has been abridged in any way that would warrant extension

11  of the legislated two- or three-year limitations period.  Indeed, Plaintiffs fail to respond to

12  BCC's arguments concerning the statute of limitations in their reply memorandum.  (*See*

13  *generally* Reply.)  The court concludes that Plaintiffs have failed to meet their burden of

14  establishing a basis for equitable tolling of the FLSA limitations period.  The court,

15  therefore, denies this portion of Plaintiffs' motion.

## IV. CONCLUSION

17      Based on the foregoing analysis, the court GRANTS in part and DENIES in part

18  Plaintiffs' motion (Dkt. # 20).  The court ORDERS as follows:

19      1.  The court conditionally certifies the following FLSA collective:

20  All individuals who worked as patient care consultants, traveling patient
    care consultants, patient sales consultants (or other similar job titles), for
21  Defendant Body Contour Centers, LLC d/b/a Sono Bello at any time from
    February 10, 2013, at any of the following locations:  Bellevue,
22  Washington; Tacoma, Washington; Beverly Hills, California; Sacramento,

California; San Diego, California; Chicago, Illinois; Cincinnati, Ohio; Cleveland, Ohio; Edina, Minnesota; Greenwood, Colorado; Houston, Texas; Overland Park, Kansas; Portland, Oregon; Salt Lake City, Utah; Scottsdale, Arizona; and St. Louis, Missouri.

2.   BCC shall provide Plaintiffs with the identification and contact information for all putative plaintiffs or members of the collective action as defined above in electronic format within 20 days of the date of this order.

3.   The court authorizes Plaintiffs to mail notices and consent forms to all putative plaintiffs or members of the collective, except the notices and consent forms shall be modified as directed above to fully comply with this order.

4.   The court authorizes Plaintiffs to mail reminder letters on or about the forty-fifth day of the notice period to those putative plaintiffs or members of the collective who have not opted in to the lawsuit, except that the reminder letters shall be modified as directed above to fully comply with this order.

5.   The court authorizes Plaintiffs to send email notifications to putative plaintiffs or members of the collective, except that the emails shall be modified as directed above to fully comply with this order.

Dated this 8th day of July, 2016.

JAMES L. ROBART
United States District Judge